744 P.2d 554

Hector GONZALES and Frank Benavidez, Petitioners–Appellees,

v.

MIDDLE RIO GRANDE CONSERVANCY DISTRICT, a New Mexico corporation; Salomon Martinez, Eugene Coble, Eris H. Wenk, Frank Tenorio, Gus Wagner, Frank Benavidez, and Benito Romero, Individually and as members of the Board of Directors of the Middle Rio Grande Conservancy District, Respondents–Appellants,

and

Eris H. Wenk,
Respondent–Appellant/Intervenor
as Real Party in Interest.

No. 8044.

Court of Appeals of New Mexico.

Oct. 1, 1987.

James R. Toulouse, Toulouse, Toulouse & Garcia, P.A., Albuquerque, for respondent-appellant/intervenor as real party in interest.

Martin Lopez, III, Lopez, Lopez & Jaffe, P.C., Albuquerque, for respondents-appellants.

Peter Everett, IV, Everett & Bennett, Albuquerque, for petitioners-appellees.

## OPINION

FRUMAN, Judge.

This case has been submitted for decision by this court following its assignment to an attorney advisory committee pursuant to our experimental plan. *See Boucher v. Foxworth–Galbraith Lumber Co.,* 105 N.M. 442, 733 P.2d 1325 (Ct.App.1986); *Patterson v. Environmental Improvement Div.,* 105 N.M. 320, 731 P.2d 1364 (Ct.App.1986); *Stoll v. Dow,* 105 N.M. 316, 731 P.2d 1360 (Ct.App.1986). The committee issued a divided opinion. The parties were notified of the opinion and of their right to submit responses, and one appellant did so. We have considered the record on appeal, the original briefs, the opinion and dissent of the advisory committee, and the one response. We substitute the following for the opinion of the advisory committee.

The issue presented on appeal is whether write-in ballots may be cast in the election of directors of a conservancy district board. Appellees were write-in candidates for election to the board of the Middle Rio Grande Conservancy District in 1984. The board had previously adopted a rule prohibiting write-in candidates and, therefore, refused to count the write-in ballots cast for appellees. Appellees sought a writ of mandamus and a writ of quo warranto in the district court requiring the ballots to be counted.

The district court determined that the board did not have the statutory authority to decide "who a qualified voter can vote for or who can be a candidate for office" and found the board's rule to be invalid because people have the constitutional guarantee of electing "a person of their choice to public office." Accordingly, the writs were granted, and the write-in votes were counted. Following the count, certification, and canvas of the returns, appellees were declared elected to the offices which they sought.

Appellants contend it was error for the district court to hold that the rule prohibiting write-in ballots was constitutionally or statutorily invalid. We disagree and affirm the decision of the trial court.

Appellants argue that: (1) NMSA 1978, Section 1–12–19.1 (Repl.1985) of the Election Code permits write-in votes only in a general election, in a special election for United States representative, or in a statewide special election, and thus that section is not applicable to a conservancy district

election; (2) NMSA 1978, Sections 73–14–19 to –33, and –83 to –86, which specifically pertain to the election of a conservancy district's board members, do not provide for write-in ballots and control; (3) the adoption of Rule 20.4(C) prohibiting write-in candidates for conservancy district board positions was implicitly authorized pursuant to Section 73–14–84; and (4) *Ostic v. Stephens,* 55 N.M. 497, 236 P.2d 727 (1951), controls in its holding that where a statute relating to elections for municipal officers set forth the sole condition under which write-in ballots could be cast, the legislature prohibited casting those ballots under any other condition.

Appellees' answer centers on the basic proposition that "the law favors the right to vote and seeks to give effect to the expressed will of the electorate. It upholds the validity of votes cast and of elections held, without fraud, though irregular." *Bryan v. Barnett,* 35 N.M. 207, 211, 292 P.2d 611, 612 (1930).

As there has been no allegation of fraud in the present case, we limit our consideration of the validity of votes cast to a determination of the validity of votes cast in the form of write-in ballots. We begin our analysis by noting that N.M.Const. art. 2, § 8 requires "free and open" elections, without any interference with "the free exercise of the right of suffrage."

■ In our review of the statutes regulating the election of board members of a conservancy district, we agree with appellants that the statutes are silent regarding the casting of a write-in ballot. However, we do not agree that Section 73–14–84 provides the authorization for the conservancy district board to determine whether write-in ballots may be cast. That section requires the board to "promulgate necessary and reasonable rules and regulations for the *procedure* to be followed at the polling places, instructions to voters and methods of determining voter eligibility." [Emphasis added.] One definition of "procedure," which we adopt for the purpose of construing Section 73–14–84, is the "mode of proceeding by which a legal right is enforced, as distinguished from the law which gives

or defines the right." *Black's Law Dictionary* 1083 (5th ed. 1979). Applying this definition to the rule-making authority granted by Section 73–14–84, we conclude that the board's power to regulate procedure at polling places, instructions to voters, and determinations of voter eligibility does not include the authority to deny the privilege of casting a write-in ballot to elect a board member.

Probing further, we find that the legislative history of the application of the Election Code provides guidance on the issue under consideration. When first enacted, the Code applied to general, primary and statewide elections, and elections to fill vacancies in congress. 1969 N.M. Laws, ch. 240, § 19. Six years later, that application was broadened: "[t]o the extent procedures are incorporated or adopted by reference by separate laws governing such elections, certain provisions of the Election Code shall also apply to * * * special district elections." 1975 N.M. Laws, ch. 255, § 6(B)(3). [At this juncture, we note that the statutory provisions governing special district elections do not expressly incorporate or adopt by reference any provision of the Election Code.] Then, in 1977, that application was further broadened: "[t]o the extent procedures are incorporated or adopted by reference by separate laws governing such elections *or to the extent procedures are not specified by such laws,* certain provisions of the Election Code shall also apply to * * * special district elections." 1977 N.M. Laws, ch. 222, § 4(B)(3), codified as NMSA 1978, § 1–1–19 (Repl.1985) (emphasis added).

■ When interpreting statutes, the reviewing court presumes that the legislature was informed as to existing law and did not intend to enact any law inconsistent with any existing law. *Quintana v. New Mexico Dep't of Corrections,* 100 N.M. 224, 668 P.2d 1101 (1983). The plain language of a statute is the primary indicator of legislative intent. *General Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 703 P.2d 169 (1985). Statutes are enacted as a whole, and thus each section or part should be construed in connection with every other

section or part so as to produce a harmonious whole. *State ex rel. Clinton Realty Co. v. Scarborough,* 78 N.M. 132, 429 P.2d 330 (1967).

█ In the context of this case, we interpret the 1977 amendment to Section 1–1–19 in a manner that will accomplish the ends sought by the legislature in its enactment. *See C. de Baca v. Baca,* 73 N.M. 387, 388 P.2d 392 (1964). Our interpretation is that the amendment endows special district voters with all substantive voting rights specifically permitted by the Election Code. These rights are subject only to: (1) any specific procedural requirements set forth in that Code; and (2) any explicit substantive limitations or procedural requirements set forth in the statutes specifically governing special district elections. Interpreting "procedure * * * followed at the [special district] polling place" in Section 73–14–84 so broadly as to prohibit write-in votes would defeat the legislative intent expressed by Section 1–1–19 of the Election Code and also would be contrary to the constitutional mandate of "free and open" elections. *See* N.M. Const. art. 2, § 8. We will not interpret these provisions to effect that defeat. *See Martinez v. Research Park, Inc.,* 75 N.M. 672, 410 P.2d 200 (1965), *overruled on other grounds, Lakeview Invs., Inc. v. Alamogordo Lake Village, Inc.,* 86 N.M. 151, 520 P.2d 1096 (1974). Whenever two statutes can be reconciled, thereby preserving the intent of each, the appellate court is bound to construe them in that fashion. *State ex rel. Bird v. Apodaca,* 91 N.M. 279, 573 P.2d 213 (1977).

█ We recognize that certain requirements of Section 1–12–19.1, pertaining to write-in ballots, do not specifically encompass or relate to special district elections and are not capable of adoption in their entirety to those elections. Therefore, by utilizing the authorization granted by Section 73–14–84, the conservancy district board may adopt rules and regulations establishing procedures for write-in ballots in a form and manner, and on a schedule that is compatible with all other requirements relating to board member elections.

We conclude our analysis by distinguishing *Ostic v. Stephens* from this case. In *Ostic,* the right to cast a write-in ballot existed, even though it was limited to the situation where no candidate had qualified for placement on the official printed ballot. Also, statutory language having the same import as the present encompassing provisions of Section 1–1–19 did not exist at the time of *Ostic* and thus could not be considered in that case. Because of these distinguishing characteristics, *Ostic* does not control our holding in the present case.

For the foregoing reasons, the decision of the trial court is affirmed. No costs are awarded.

IT IS SO ORDERED.

This court acknowledges the aid of attorneys Richard E. Olson, K. Douglas Perrin, and Rod M. Schumacher in the preparation of this opinion. These attorneys constituted an advisory committee selected by the chief judge of this court, and we express our gratitude to them for the quality of their work and their voluntary service.

MINZNER and GARCIA, JJ., concur.